UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOEY D. MIDDLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-CV-158 |
| ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Summary Judgment [Doc. 15], and the defendant's Motion For Summary Judgment [Doc. 19]. Plaintiff Joey D. Middleton seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

## BACKGROUND

Plaintiff was 39 years of age when the ALJ issued his decision (Tr. 95). He has less than a high school education with work experience in restaurants as a dishwasher and cook (Tr. 110, 118). He alleges that he has been disabled since December 1, 2001, due to a "nervous condition" (Tr. 109), "seizures" (Tr. 684), and low intellectual functioning (Tr. 355-360).

## MEDICAL RECORD EVIDENCE

The plaintiff is claiming disability beginning in December, 2001, based on seizures and borderline intellectual capacity. The relevant medical record evidence is summarized as follows:

### Seizures

Treatment notes from Cherokee Health Systems suggest that Plaintiff did not begin complaining of seizures until January, 2006 (Tr. 584). Prior to that, his treatment, since at least 2002 had been for anxiety and depression (Tr. 326-349). In 2006, however, plaintiff reported being off all of his seizure medication after losing his health insurance (Tr. 584). Plaintiff stated he could not afford to see his neurologist without insurance and said he did not know what seizure medication he had been taking (Tr. 584). He asked Dr. Melody Lambert, his treating physician, to prescribe a generic antiepileptic drug, and Dr. Lambert prescribed Dilantin, 100 mg, to be taken three times per day (300 mg) (Tr. 584).

The following month Dr. Lambert prepared a letter, addressed to "To Whom It May Concern," listing the medical conditions for which he treated plaintiff (Tr. 583). Dr. Lambert stated plaintiff had a seizure disorder, which he described as "poorly controlled" despite medical therapy (Tr. 583).

Plaintiff continued to complain of seizures at his March 2006 visit and asserted that in the past he had been prescribed up to eight Dilantin pills per day (Tr. 589). Dr. Lambert increased plaintiff's Dilantin prescription to two pills three times per day, or six pills per day (600 mg) (Tr. 589).

More than a year and a half later, plaintiff again complained of seizures at his November 2007 visit, stating that he had two to three major generalized seizures per week and had to have his four front teeth removed so that he would not bite off his tongue during his seizures (Tr. 643). Plaintiff reported taking dilantin, 100 mg, three times per day, the maximum dosage he could tolerate because of side effects (Tr. 643). Dr. Lambert ordered plaintiff to continue with Dilantin and added two pills of Depakote ER 500 mg (1000 mg) (Tr. 643).

At his appointment the following month, Dr. Lambert reported that plaintiff came in for a "one-month old seizure disorder, diabetes, anxiety, and depression" (Tr. 642). Plaintiff stated that he did not realize he should take two pills of Dilantin, 100 mg, three times per day, and admitted that he was not taking enough (Tr. 642). Dr. Lambert prescribed Dilantin with a dosage schedule to gradually increase to 200 mg, three times per day (600 mg) (Tr. 642). Dr. Lambert also continued plaintiff's prescription of Depakote (1000 mg) (Tr. 642).

At his February 2008 visit, Dr. Lambert treated plaintiff for hemorrhoids (Tr. 641). The treatment notes make no mention of seizures or seizure medication (Tr. 641).

### **Intellectual Functioning**

In July 2002, Pamela Branton, a Licensed Psychological Examiner, conducted a psychological consultative examination at the request of the state disability service (Tr. 355-59). She found that plaintiff: could understand and remember moderately detailed, possibly complex, instructions; was mildly limited in concentration; and did not have a significantly limited memory (Tr. 358). She observed that plaintiff presented as a somewhat histrionic individual who was

cooperative and pleasant with organized thought processes and low average intellectual functioning (Tr. 356, 358-59)

Two months later, Dr. Ronald Kourany, a state doctor, relying on the consultative examiner's report, opined that plaintiff could perform simple tasks and sustain persistence (Tr. 377). Dr. Kourany also opined that plaintiff could only relate in a "distant way with the public" (Tr. 377).

In February 2004, Robert Spangler, Ed. D., a licensed psychologist, conducted a second psychological consultative examination of plaintiff at the request of the state disability service (Tr. 577-81). He noted that plaintiff drove himself to the appointment, was cooperative and erratic, and had "low average intelligence." Spangler concluded that the plaintiff's "ability to understand and remember is not significantly limited," but that his ability to sustain concentration and persistence is limited to a moderate degree" (Tr. 580). He diagnosed a major depressive disorder (Tr. 580).

In February 2004, Jeffrey Bryant, Ph.D., another psychologist, reviewed the record and opined that plaintiff could persist on simple tasks but would have some "but not substantial" difficulty working with the general public and with detailed tasks (Tr. 463). Bryant concluded that plaintiff would have difficulty coping with frequent changes due to reduced stress tolerance (Tr. 463).

The following year, Roy Nevils, Ph.D., a clinical psychologist, conducted another psychological consultative examination at the request of the state disability service (Tr. 563-68). Nevils noted that the plaintiff presented himself for evaluation in house slippers and was "manifestly uncooperative" with all testing (Tr. 567). For example, he claimed: to be unable to count three

4

blocks placed in front of him; to not know what day comes after Saturday; and to not know what money was used for (Tr. 564). He also claimed he could not read or write (Tr. 567). Testing showed a full-scale IQ of 45 (Tr. 564). Plaintiff responded that a bad day was when he had seizures, biting his tongue and jaw (Tr. 566). Nevils concluded that the IQ testing results were "an underestimate of Mr. Middleston's functioning, due to malingering" (Tr. 567-68).

## **TESTIMONY EVIDENCE**

At the March 13, 2008 hearing, plaintiff testified that he had seizures two to three times per week (Tr. 684). He said that his doctor had increased his seizure medication and that, since then, he had experienced improvement (Tr. 684). His improvement, though, was dependent on being able to continue taking his medications, which he obtained through a special program (Tr. 684). He stated that he did not take his seizure medications once or twice per week, although he claimed to have taken them daily in the previous two months (Tr. 690). He also testified that, because of his seizures, he had four teeth pulled to prevent him from biting his tongue, lip, and jaws (Tr. 684). At the August 15, 2005 hearing, plaintiff stated he lost his insurance and could not obtain his seizure medications and, as a result, was having a seizure once per week (Tr. 656).

Plaintiff said he lived with his brother, who took care of him and helped with the household chores (Tr. 687). He denied doing any regular driving (Tr. 687-88).

A vocational expert, Donna Bardsley, also testified at the March 13, 2008 hearing.

5

The ALJ asked the vocational expert to consider a hypothetical individual of plaintiff's age and with plaintiff's education and work experience who was limited to light work (Tr. 691-92). The ALJ additionally asked the vocational expert to assume that the individual had a borderline intellect and could read at the high school level and perform math at the fifth-grade level, but could not work around unprotected heights, moving machinery, or excessive dust or pollutants (Tr. 691-92). Bardsley testified that such a person could perform light work as a sales clerk, information clerk, stock clerk, hand packager, sorter, assembler, inspector, and greeter (Tr. 691). She testified that there were approximately 10,000 such jobs total in the regional economy (Tr. 691). The vocational expert further testified that her testimony was consistent with the information contained in the *Dictionary of Occupational Titles* (Tr. 692).

**DECISION OF THE ALJ**

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 1, 2001, the alleged onset date.

3. The claimant has the following severe impairments: seizures, arthralgia, bronchitis, and borderline intellectual functioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

6

      impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) which requires no more than borderline intellect and limited education, reading at a high school level, performing mathematics at a fifth grade level, no unprotected heights or moving machinery and no exposure to excessive dust and pollutants.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on November 8, 1968, and was 33 years old, which is defined as a younger individual between the ages of 18 and 49, on the alleged disability onset date.

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2001 through the date of this decision.

(Tr. 16-25).

The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 9-11). Therefore, the ALJ's decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STANDARD OF REVIEW

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

Plaintiff, in his memorandum in support of motion, argues that the ALJ erred in finding that he retained the residual functional capacity to perform a range of light work, because

8

the ALJ did not "advise the VE [vocational expert] with the claimant's full residual functional capacity." Specifically, the plaintiff argues that while the ALJ did include borderline intellect in the hypothetical to the VE, the ALJ did "not ask the VE to assume a restriction to simple instructions." Plaintiff asserts that the findings of Branton require that limitation in the hypothetical.

This argument is without merit for two reasons. First, Branton's mental assessment was as follows: the plaintiff's "ability to understand and remember directions may be somewhat limited. He could probably understand and remember moderately detailed, possibly complex instructions" (Tr. 358). This assessment does not lead to the conclusion, suggested by plaintiff, that the plaintiff can follow only "simple instructions."

Second, the ALJ explained why he gave little weight to the opinion of Branton.[1] He found that her assessment was inconsistent and based solely on the subjective complaints of the plaintiff (Tr. 23). This is a reasonable and valid basis for decision by the ALJ.

In addition, in his memorandum in support of motion, the plaintiff objects to the ALJ's finding that his statements concerning the limiting effects of his seizure symptoms are not entirely credible (Tr. 22-23).

The plaintiff's argument is insufficient to overcome the significant deference owed an ALJ's credibility finding. See Cruse v. Commissioner of Social Security, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight. . .").

---

[1] It should be noted also that Branton is not a Ph.D. or a Clinical Psychologist, but is a Licensed Psychological Examiner.

The ALJ reasonably relied on the vocational expert's testimony to conclude that plaintiff could perform a significant number of jobs, despite the limitations caused by his impairments. Substantial evidence in the record as a whole supports the ALJ's decision that plaintiff was not disabled.

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that he could perform a range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that the plaintiff's Motion For Summary Judgment [Doc. 15] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 19] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).